UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                        )<br>        Plaintiff,                             )<br>                                                        )<br>v.                                                   )<br>                                                        )<br>MARK DeGRAVE,                        )<br>                                                        )<br>        Defendant.                         ) | Criminal No. 6:17-cr-39-GFVT-CJS<br>and<br>Civil No. 6:18-cv-318-GFVT-CJS<br><br>**ORDER AND<br>REPORT AND RECOMMENDATION** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Mark DeGrave, *pro se*, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (R. 37). The Government has filed its response (R. 46), and DeGrave has replied (R. 56). Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b). *See also* Rule 10 of the Rules Governing § 2255 Proceedings ("A magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636."). For the reasons given below, it will be recommended that DeGrave's § 2255 motion be **denied**.[1]

**I.    BACKGROUND**

In July 2017, DeGrave was indicted for knowingly possessing a machinegun, in violation of 18 U.S.C. § 922(o) (Count 1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 2). (R. 1). In September 2017, he pled guilty pursuant to a plea agreement (R. 25), to Count 1 (R. 36); the Government dismissed Count 2 at sentencing (R. 52,

---

[1] Also pending before the Court is DeGrave's Motion to Review and Rule on His § 2255 Motion, which appears to ask the Court for a ruling on his § 2255 motion, asserting that, if the Court grants his motion, he will be eligible for release. (R. 57). This motion is rendered moot by the entry of this Report and Recommendation.

Page ID 332). In his plea agreement, he agreed that a sentencing enhancement under USSG § 3C1.2 was warranted, which applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." (R. 25, Page ID 68). DeGrave was sentenced to 48 months in prison "with credit for time served for time spent in state custody for the underlying matter which is the basis for the federal offense." (R. 36, Page ID 182) (capitalization omitted). DeGrave did not appeal.

DeGrave later filed this § 2255 motion, arguing that his trial counsel was ineffective for failing to argue (1) that there was "no nexus between USSG § 3C1.2 and DeGrave's instant offense of 18 U.S.C. § 922(o)"; and (2) "that under 18 U.S.C. § 3553(a) factors, the Court has the authority to take the six month state sentence off the back end of DeGrave's federal sentence." (R. 37, Page ID 199, 206) (minor alterations for readability). The Government responds that both claims are meritless. (R. 54).

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a defendant may seek relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a defendant "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.

1990)).  A defendant must prove his allegations by a preponderance of the evidence.  *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018).

      **A.**      **DeGrave Has Failed to Show that his Trial Counsel was Ineffective**

To successfully assert ineffective assistance of counsel, DeGrave must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove deficient performance, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*.  This is met by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In order to prove prejudice, DeGrave "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.  When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id*. at 695.  Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697. ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

### 1. DeGrave Has Failed to Show that His Trial Counsel was Ineffective Regarding his § 3C1.2 Enhancement

DeGrave first argues that his trial counsel was ineffective for failing to argue that there was no nexus between his § 3C1.2 enhancement and his underlying offense. (R. 37, Page ID 199). As an initial matter, DeGrave fails to appreciate the significance that, in his plea agreement, he *agreed* that the § 3C1.2 enhancement applied to him. (R. 25, Page ID 68 (agreeing that, "[p]ursuant to U.S.S.G. § 3Cl.2, increase the offense level by 2 levels because the Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.")); (R. 52, Page ID 322 ("We agree to the enhancement as part of the plea; we're not challenging that.")). As other courts have observed, counsel cannot be ineffective for failing to object to an agreed-upon enhancement. *See Cannon v. United States*, No. 2:13-CR-94, 2019 WL 1064096, at *5 (E.D. Tenn. Mar. 6, 2019) ("Petitioner cannot admit in his plea agreement that the firearm enhancement is appropriate and then complain that his attorney was ineffective for failing to argue at sentencing that the firearm enhancement should not apply."); *Taylor v. United States*, No. 3:12-CR-65, 2016 WL 3162060, at *3 (E.D. Tenn. June 3, 2016) ("[O]bjecting to the enhancements would have been tantamount to objecting to the entire plea agreement itself. The plea agreement explicitly recited that petitioner agreed that his base offense level shall be increased pursuant to the firearms enhancement, and that he agreed that his base offense level shall be increased pursuant to the manager enhancement contained in USSG § 3B1.1(c). . . . Counsel was not ineffective for failing to object to the non-objectionable."); *Fairley v. United States*, 298 F. Supp. 2d 679, 685 (E.D. Mich. 2004) ("Petitioner first claims that counsel

was ineffective because he failed to object to the two-level firearm enhancement. Petitioner stipulated to this enhancement, which was a part of his plea bargain. . . . Therefore, any objection by counsel to the enhancement would have been futile and, as a result, unnecessary.").

In order to challenge the enhancement, the Government argues that DeGrave must show *Strickland* prejudice by showing a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (R. 54, Page ID 447-48) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). DeGrave objects to such a standard, stating that he is not "attacking his 'guilty plea.' [He] is attacking his counsel's performance at 'sentencing.'" (R. 56, Page ID 459).

The Court agrees with the Government that DeGrave's sentencing-enhancement claim cannot be divorced from the context in which it arose—DeGrave's plea agreement. As the Supreme Court noted in *Hill*, where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Accordingly, as DeGrave is challenging the competence of counsel's representation of something agreed to in a plea agreement, he ultimately must challenge his plea agreement's stipulation to the enhancement as *invalid* due to counsel's alleged error.

Although DeGrave's stipulation to the enhancement in his plea agreement requires the Court to consider *Strickland* prejudice in the guilty plea context, *Hill*'s precise formulation of prejudice—that DeGrave has to prove that he would have otherwise *proceeded to trial*—does not necessarily govern. After all, *Hill* broadly defined prejudice in the plea context, stating that the inquiry "focuses on whether counsel's constitutionally ineffective performance affected the

5

outcome of the plea process." 474 U.S. at 59. Under the facts of that case, it specifically concluded that the petitioner had to show that he would have not pled guilty and would have proceeded to trial. *Id.* But as the Supreme Court later observed in *Frye*, "*Hill* was correctly decided and applies in the context in which it arose. *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). "*Frye* thus clarified that individuals who allege ineffective assistance of counsel during the plea process may satisfy the prejudice prong even without a showing that they would have gone to trial were it not for counsel's deficient performance." *Rodriguez-Penton v. United States*, 905 F.3d 481, 487 (6th Cir. 2018).

The same holds true here. DeGrave need not necessarily prove that he would have proceeded to trial if counsel erred in his advice about stipulating to the § 3C1.2 enhancement. DeGrave can demonstrate prejudice if he can show that he would have secured a plea agreement without the § 3C1.2 enhancement. *See id.* at 489-90 ("And where counsel's assistance falls short, as here, at issue is whether the defendant can show a reasonable probability that, with proper advice, the outcome of those [plea] negotiations would have been different."); *Swiger v. United States*, No. 17-5384, 2017 WL 8776680, at *2 (6th Cir. Nov. 8, 2017) ("First, there is no reasonable probability that, had counsel advised him that he could challenge the application of certain enhancements under the guidelines, he would have been able to secure a more favorable plea agreement or that the court would have imposed a lesser sentence.").

This inquiry, applied here, boils down to whether counsel's alleged errors in connection with the § 3C1.2 enhancement would have led to a more favorable plea agreement for DeGrave, i.e., a plea agreement without the enhancement. It thus follows that if an objection to the enhancement would have been meritless in the first place, counsel cannot have been ineffective.

6

*Chalk v. United States*, No. 113CR133HSMSKL2, 2018 WL 1124968, at *4 (E.D. Tenn. Mar. 1, 2018) ("Accordingly, even if counsel did not object to the role enhancement, counsel cannot be ineffective in failing to make a meritless objection to the two level role enhancement nor could Petitioner be prejudiced."). Because DeGrave explicitly states in his reply that he is not "attacking his 'guilty plea'," the Court could simply deny his claim without further review for failure to contest the validity of his plea. (R. 56, Page ID 459). *See Wallace v. United States*, No. 18-1422, 2018 WL 4922802, at *2 (6th Cir. Aug. 3, 2018) ("Counsel was not required to file objections at sentencing that were precluded by the terms of the plea agreement. Wallace does not argue that his plea agreement was invalid, and therefore cannot show deficient performance.") (internal citation omitted). However, the Court will liberally construe DeGrave's claim as attacking the validity of his guilty plea.

DeGrave bears "a heavy burden of proof" to show ineffective assistance of trial counsel in failing to challenge the § 3C1.2 enhancement. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (quoting *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005)). A § 3C1.2 enhancement applies when the government shows the following:

> [T]he defendant (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

*United States v. Dial*, 524 F.3d 783, 786–87 (6th Cir. 2008) (quoting *United States v. Southerland*, 405 F.3d 263, 268 (5th Cir. 2005)). The Government would have had to prove this enhancement by a preponderance-of-the-evidence standard. *United States v. Stafford*, 721 F.3d 380, 402 (6th Cir. 2013).

DeGrave challenges only the fifth part of the test. (R. 37, Page ID 200). This part requires a sufficient nexus between his reckless flight and his underlying offense. *Dial*, 524 F.3d at 786. In determining whether a sufficient nexus exists, courts consider primarily evidence of the "defendant's state of mind" during the flight but also "temporal and geographic proximity of the reckless endangerment during flight to the offense of conviction" as supplemental factors. *Id.* (quoting *Southerland*, 405 F.3d at 268-69).

Some background information is necessary. Police visited DeGrave's house twice. On February 17, 2017, they went to his house, making contact with his girlfriend.[2] (Presentence Investigation Report (PSR), Page 4). She consented to a search of the home, where police observed, among other things, fully automatic firearms. (*Id.*). After police left the residence, an officer saw DeGrave driving his girlfriend's vehicle nearby. (*Id.*). The officer tried to stop DeGrave but he increased his speed and fled, eventually leading the officer to end "the pursuit after the conditions became unsafe." (*Id.*). However, the officer located the vehicle again—DeGrave had exited the vehicle and fled on foot to a wooded area with officers unable to locate him. (*Id.*). Three days later, on February 20, 2017, police went back to the house and apprehended DeGrave as he fled. (*Id.* at Page 5).

The record here establishes a sufficient nexus between DeGrave's February 17, 2017 flight and his possession of machine guns. First, DeGrave's flight during his ongoing crime of possession of a machine gun is strong evidence showing that his state of mind during his flight related to that offense. *Southerland*, 405 F.3d at 269 ("The most compelling evidence of Southerland's state of mind during the flight is the evidence that while fleeing he was in the midst

---

[2] DeGrave has previously indicated that he considers his girlfriend to be his common-law wife. (*See* PSR, DeGrave's objection to ¶ 67).

8

of the commission of several crimes.).   Further evidence of his state of mind is that he knew that his machine gun possession was illegal. *United States v. Cigarroa-Luna*, 331 F. App'x 385, 387 (6th Cir. 2009) ("Given that Cigarroa-Luna knew he was in this country illegally, and did not know about any outstanding warrants that would provoke the police to pursue him, his state of mind must have been related to avoiding arrest for illegal reentry.").[3]   Temporal and geographic proximity are also satisfied, as DeGrave fled from law enforcement as soon as he encountered officers when they were near his home that contained the machine gun. *See United States v. Pope*, 335 F. App'x 598, 606 (6th Cir. 2009) ("Pope fled from law enforcement immediately after completing the drug transaction, and his sole purpose for fleeing was to avoid imminent arrest. The nexus requirement was satisfied."); *Dial*, 524 F.3d at 788 (concluding that there was "geographic proximity between the location of the conspiracy and the location of his reckless flight").

DeGrave does not contest the existence of this evidence.  (R. 56, Page ID 463).  However, he offers four reasons why there is no nexus between his offense and his flight:  (1) "DeGrave never even knew that law enforcement had been to his residence"; (2) "DeGrave knew he had active war[a]nts from the state of Misso[u]ri . . ."; (3) "DeGrave was scared that law enforcement were going to kill him"; and (4) "[l]aw enforcement went to DeGrave's house (the first time before the police pursuit) to arrest DeGrave for charges unrelated to DeGrave's instant offense."  (R. 37, Page ID 201-02).  In other words, DeGrave asserts that he "fled due to being scared of the charges in Missouri not the charges for the instant offense and that the police were going to kill him." (*Id.*

---

[3] DeGrave may object and emphasize that he *did* know about outstanding state warrants.  (*See* R. 56, Page ID 465).  However, the Court does not consider only DeGrave's arguments of his state of mind but also considers the totality of the record evidence and the reasonable inferences that can be drawn therefrom.

9

at 203). DeGrave acknowledges that this argument addresses only his state of mind and not temporal or geographic proximity. (R. 37, Page ID 204).

Given DeGrave's presentation of this claim, it is fitting to clarify the applicable legal standard for the enhancement. First, the Government need not "demonstrate that the underlying offense caused either the reckless endangerment during flight or the flight itself, only that a sufficient nexus lie between the underlying offense and the reckless flight." *Dial*, 524 F.3d at 787 (quoting *Southerland*, 405 F.3d at 268). Second, the Court does not review DeGrave's assertions about his state of mind in a vacuum. Rather, in considering whether to apply an enhancement, the Court considers the totality of the circumstances. *See United States v. Adams*, 214 F.3d 724, 729 (6th Cir. 2000) ("Because the totality of the circumstances supports the district court's finding, we affirm Chester's three-level sentencing enhancement."). And it considers reasonable inferences about a defendant's state of mind in fleeing. *See United States v. Doe*, 723 F. App'x 178, 179 (3d Cir.), *cert. denied*, 139 S. Ct. 352 (2018) ("It is therefore reasonable to infer that Doe's reckless flight on August 23, 2013 was prompted by his concern that he would be apprehended with evidence of the drug conspiracy.").

Here the totality of the circumstances and reasonable inferences from DeGrave's conduct establish a sufficient nexus between his flight and the instant offense—he knew he illegally possessed machine guns, he fled during the ongoing offense, he fled near the scene of the crime upon encountering law enforcement. DeGrave's alternative explanation for his state of mind is not compelling enough to meet his burden on § 2255 review of showing that trial counsel was objectively unreasonable in failing to object to a § 3C1.2 enhancement when the record demonstrates that the Government would have otherwise been able to prove the enhancement by a preponderance of the evidence. *Hutchinson v. United States*, No. 17-3096, 2017 WL 7311846,

10

at *3 (6th Cir. Aug. 11, 2017) ("On this record, any objections to the sentence enhancement under § 2G2.1(b)(5) and the discussion of his sexual conduct with another minor would not have been successful. Counsel is not ineffective for failing to pursue meritless objections."). Accordingly, because DeGrave cannot show that counsel was ineffective with regard to his § 3C1.2 enhancement, he cannot show that he could have obtained a more favorable plea agreement—one without the enhancement.

### 2. DeGrave Has Failed to Show that His Trial Counsel was Ineffective Regarding the § 3553(a) Factors

DeGrave next argues that his trial counsel was ineffective for failing to argue that, under the 18 U.S.C. § 3553(a) factors, the presiding District Judge should have reduced his federal sentence by the six months that he received on state convictions. (R. 37, Page ID 205). Some background information is necessary.

DeGrave's sentencing range under the Sentencing Guidelines was 46 to 57 months. (PSR, Page 22). DeGrave was charged with state crimes of resisting arrest and fleeing or evading arising from the events described earlier, for which he received six months in prison. (*Id.* at 14). DeGrave states that, at sentencing, his trial counsel "asked the Court if DeGrave could get credit for time served when DeGrave was in state custody." (R. 37, Page ID 205). He asserts that counsel erred by asking for credit to his federal sentence under 18 U.S.C. § 3585(b), which "was impossible for the Court to do." (R. 37, Page ID 205). He argues that, had counsel made the argument under the § 3553(a) factors, the district court would have reduced his federal sentence by six months, i.e., 48 months to 42 months, for time spent in state custody. (*Id.* at Page ID 206).

Before further addressing DeGrave's claim, two points should be clarified. First, to the extent that DeGrave argues that his counsel requested credit in any manner *for the six months he received on his state offenses*, he is incorrect. (*See* R. 37, Page ID 205-06). While counsel filed a

11

sentencing memorandum asking "that the judgment specifically reflect credit for time served since his apprehension for this offense on February 20, 2017," that request was specifically tied to a state offense related to *possession of a machine gun*, which counsel argued "failed to state an offense" under state law. (R. 31, Page 98). Counsel maintained that he "raised this issue in the Clay Circuit Court but the indictment was dismissed in favor of the Federal prosecution before this issue could be decided on the merits." (*Id.*). Notably, counsel never argued in the sentencing memorandum that DeGrave should get credit for the six months in prison he received on his state *resisting arrest and fleeing or evading convictions*.

> Counsel's argument at sentencing was consistent with the sentencing memorandum:
>
> We set forth in our sentencing memorandum the flaws of the state court indictment, and we believe that although this is normally a BOP matter, that the judgment ought to reflect that he gets credit for time served since his arrest, so he's not deprived of that time served since there was a problem in the state court indictment.

(R. 52, Page ID 372).

Second, DeGrave argues that his counsel made an argument for credit under § 3585(b) (R. 27, Page ID 205), a proposition the Government accepts (R. 54, Page ID 450). However, the record does not clearly support such a conclusion.

> Under 18 U.S.C. § 3585(b),
>
> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

"[I]t is the Attorney General, through the Bureau of Prisons ("BOP"), and not the district court, who has the authority to grant credit for time served" under § 3585(b). *United States v. Carpenter*,

12

359 F. App'x 553, 557 (6th Cir. 2009) (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992)). Counsel never cited § 3585(b) in the sentencing memorandum. (*See* R. 31). Nor did counsel rely on this provision at sentencing. (See R. 52, Page ID 371-75). Instead, counsel appeared to argue for relief outside the strictures of § 3585(b), as he argued that the District Judge should grant the credit as opposed to the BOP:

> THE COURT: Well, why would this, why would this not be a BOP matter? I mean, what is it about the problem that makes this not a BOP matter?
>
> MR. ROSSMAN: Well, I think that -- it was the fact that the state court indictment failed to state an offense, *and I think that's something that a judge would need to look at and that the BOP would not*.

(R. 52, Page ID 372) (emphasis added). Ultimately, the District Judge rejected counsel's argument, concluding that it would be the BOP's province to make a credit determination. (*See* R. 52, Page ID 374 ("BOP looks at that, they have a certain regulatory framework that they use in which they determine -- they make determinations about what you get credit for and what you don't get credit for, and they can actually have the record in front of them and make the decision about that.")). This determination is reflected in the judgment: "Forty-eight (48) months with credit for time served for time spent in state custody for the underlying matter which is the basis for the federal offense." (R. 36, Page 182) (capitalization omitted).

Having clarified the record, the Court agrees with DeGrave to the extent that he argues that his counsel never specifically argued that the District Judge should rely on the § 3553(a) factors to credit his federal sentence for the six months he served in state prison. He is also correct that the Sixth Circuit has opined that a district court may, at sentencing, acknowledge a state sentence:

> Nevertheless, Osborn also argues that the district court should be free to consider, in its application of the § 3553(a) factors, the fact that his federal sentence is consecutive to a state sentence because it bears on the total length of his incarceration. We express no opinion as to the merit of the argument that a defendant's unrelated state sentence affects the reasonableness of his federal

13

sentence, but agree that the current sentencing scheme permits a district court to acknowledge the fact of an unrelated state sentence.

*See United States v. Osborn*, 318 F. App'x 371, 375 (6th Cir. 2009); *United States v. Gibbs*, 626 F.3d 344, 350 (6th Cir. 2010) (considering argument that "the district court failed to recognize its discretion to take into account the already discharged sentence in weighing the § 3553 factors").[4]

Nevertheless, the mere fact that counsel did not make the argument DeGrave wanted does not entitle him to relief. Rather, to succeed on his claim, DeGrave must show "a reasonable probability that the conditions of . . . his sentence would have been different but for his trial counsel's [alleged] errors." *Newman v. United States*, 162 F.3d 1162 (6th Cir. 1998). DeGrave's insistence that the District Judge would have reduced his sentence by six months is a conclusion for his argument—not an explanation. This is where DeGrave fails, as he does not offer any *valid* explanation for why the District Judge would have varied below the Guidelines range to sentence him to 42 months in prison rather than 48 months. *See Allen v. United States,* No. 2:14-CR-020, 2020 WL 1902404, at *5 (E.D. Tenn. Apr. 16, 2020) ("A [§ 2255] motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.").

DeGrave's failure to explain his claim illustrates why it is important for a § 2255 motion to "state the facts supporting each ground"—the Court needs to be able to figure out the factual basis supporting a claim. Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2(b). "[I]t is not for the court to search the record and construct arguments. Parties

---

[4] At least one district court, however, has concluded that it would be inappropriate to credit state time under § 3553(a) when such a credit award would be prohibited under § 3585(b). *Jackson v. United States*, No. 3:11CR6, 2012 WL 6108978, at *3 (W.D.N.C. Dec. 10, 2012) ("Not only would failing to argue a[n] inappropriate factor under § 3553(a) be unavailing in imposing a sentence, it would have been equally unavailing in considering allowance of a variance as it would have improperly credited petitioner with time clearly not creditable under § 3585(b).").

14

must do that for themselves." *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017). Even though DeGrave is *pro se*, the Court "should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Moreover, the Court cannot develop his claim for him. *Brenay*, 709 F. App'x at 337 ("[W]hile it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so."); *Kelley v. Burton*, 792 F. App'x 396, 397 (6th Cir. 2020) (concluding that district court erred in construing a habeas petition to include a claim that the petitioner did not present).

Here, DeGrave does not explain which of the § 3553(a) factors counsel should have argued that the District Judge should have looked to in considering whether to credit his six-month state sentence, how such consideration would have weighed in comparison to the other § 3553(a) factors, and why the District Judge would have been persuaded to vary below the Guidelines range. His failure to adequately develop his claim dooms it. *See United States v. Jones*, 308 F. App'x 930, 932 (6th Cir. 2009) (denying ineffective-assistance claim because defendant "offer[ed] no reason to believe that the district court would have sentenced him differently had counsel sought a departure"; *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir.), *reh'g denied* (Apr. 27, 2017), *cert. denied*, 138 S. Ct. 261 (2017) ("A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

Regardless, the semblance of a claim that DeGrave presents fails—he offers only one explanation for why the district court would have varied below his sentencing range to impose a 42-month sentence. Citing the Judgment's reference to "credit for time served for time spent in state custody" (R. 36, Page ID 182 (capitalization omitted)), he argues that "[i]t is clear that this Court wanted to credit DeGrave's federal sentence to the time DeGrave did on the 6 month state sentence" (R. 37, Page ID 207). But DeGrave reads too much into the record.

15

At sentencing, in an apparent nod to § 3585(b), the District Judge concluded that counsel's earlier discussed credit argument fell within the BOP's province, not his: "As a general proposition, though, Mr. DeGrave, if you were serving time for the conduct that I just sentenced you on, and the record reflects that, then BOP will give you credit for that. That's the way it should work. I would agree with that." (R. 52, Page ID 375). It was with this in mind that the District Judge concluded that "I'm going to order that sentence be imposed as I've articulated it." (*Id.* at Page ID 376). Therefore, the District Judge did not express a desire for DeGrave to get credit for his state sentences by any means permissible—he expressed a desire for him to get the credit if the BOP determined that awarding the credit was appropriate.

Moreover, the record reveals that the District Judge determined that a within Guidelines sentence was appropriate. (R. 52, Page ID 358 ("I think actually the recommended range here accurately reflects the facts that I have in front of me.)). And the District Judge concluded that DeGrave's "serious crime" warranted "a significant period of incarceration." (*Id.* at Page ID 359). DeGrave has failed to show that the District Judge would have cast aside his sentencing determinations and varied below the Guidelines range had counsel made the specific argument he desired. This claim therefore fails. *See Vasquez v. United States*, No. 2:08-CV-04081-NKL, 2008 WL 4279813, at *5 (W.D. Mo. Sept. 15, 2008) ("It is unlikely that an argument concerning Vasquez's jail time would have resulted in a lower sentence. Vasquez has not established ineffective assistance based on failing to raise the issue of his eighteen months in county jail on an unrelated conviction.").

**B.     DeGrave is not Entitled to an Evidentiary Hearing**

DeGrave requests an evidentiary hearing. (R. 37, Page ID 195; R. 56, Page ID 474). However, no hearing is necessary "where the petitioner's allegations 'cannot be accepted as true

because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Here, the briefings on DeGrave's § 2255 motion, when viewed alongside the record in this case, present no issues of fact that need to be resolved. Accordingly, no evidentiary hearing is required and therefore the recommendation to deny DeGrave's § 2255 motion includes his request for an evidentiary hearing.

### III.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of DeGrave § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the Court's entry of its final order in this matter.

### IV.     CONCLUSION, ORDER, AND RECOMMENDATION

For the reasons stated herein, **IT IS ORDERED** that DeGrave's Motion to Review and Rule on His § 2255 Motion (R. 57) is hereby **denied as moot** in light of this Report and Recommendation.

And further, for the reasons stated herein, **IT IS RECOMMENDED** that:

1)     DeGrave's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 37) **be denied**;

2)     the issuance of a Certificate of Appealability **be denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

3)     Judgment in favor of the United States **be entered** contemporaneously with the Court's entry of its final order; and

4)     this action **be dismissed** and **stricken** from the active docket of this Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. See also Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 30th day of April, 2020.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\habeas petitions\2255 IAC\17-39-GFVT DeGrave R&R final.docx